UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No_____ |
| ) | |
| GREGORY M. BERCOWY, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | 8:18 cv 792 T 26 cpt |
| ) | |
| ) | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("the Commission") alleges the following against Defendant Gregory M. Bercowy and hereby demands a jury trial:

## PRELIMINARY STATEMENT

1. This enforcement action involves a scheme by Gregory M. Bercowy ("Bercowy"), who, during the relevant period, was affiliated with a registered investment adviser, to manipulate a penny stock security. In August 2016, Bercowy attempted to manipulate the stock of Aureus, Inc., a penny stock company, through amassing over three million shares of Aureus in the brokerage accounts of his relative through his online access of his relative's accounts . While amassing those shares Bercowy entered and quickly canceled a large number of orders at prices that were much higher than the prevailing quoted market price. Bercowy took those actions with the intention to fraudulently increase the price of the security.

2. Through the activities alleged in this Complaint, Bercowy has engaged in (a) fraudulent or deceptive conduct in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; (b)

manipulation in violation of Section 9(a) of the Exchange Act; and (c) fraud in the offer or sale of securities, in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act").

3.    The Commission seeks: (a) a permanent injunction prohibiting the Defendant from further violations of the relevant provisions of the federal securities laws; (b) disgorgement of the Defendant's ill-gotten gains, plus pre-judgment interest; and (c) civil penalties due to the egregious nature of the Defendant's violations.

## JURISDICTION

4.    The Commission seeks a permanent injunction and disgorgement pursuant to Section 20(b) of the Securities Act [15 U.S.C. §77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. §78u(d)(1)]. The Commission seeks the imposition of civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

5.    The Court has jurisdiction over this case pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§77t(d), 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e), 78aa]. Venue is proper in this district because Bercowy is a resident of this district.

6.    In connection with the conduct described in this Complaint, Bercowy directly or indirectly made use of the mails or the means or instruments of transportation or communication in interstate commerce.

7.    Bercowy's conduct involved fraud, deceit, or deliberate or reckless disregard of regulatory requirements, and resulted in substantial loss, or significant risk of substantial loss, to other persons.

2

**DEFENDANT**

8.      Gregory Bercowy, age 54, is a resident of St. Petersburg, Florida.  Although

Bercowy has no personal registration history with any brokerage firm, he held a Financial

Industry Regulatory Authority (FINRA) Central Registration Depository (CRD) number, which

is typically used to track the registration and licensing status of registered representatives in the

brokerage industry.  Bercowy was, during the relevant time period, associated with a state-

registered investment adviser.

**RELEVENT ENTITY**

9.      Aureus, Inc. was incorporated in the State of Nevada on April 19, 2013.  Aureus

describes itself as a startup company in the business of mineral exploration but without any

mining operations.  Currently (and during the relevant time period) Aureus's securities are

quoted under the symbol "ARSN" on OTC Link operated by OTC Markets Group Inc. ("OTC

Markets").

**FACTS**

10.      On August 4, 2016, Aureus announced that it was launching a new corporate

website to "provide a place for customers, partners, stakeholders and current and prospective

shareholders to become educated about Aureus."

11.      Starting on that same day Bercowy began to purchase shares of Aureus as part of

a scheme to maintain or boost the price of Aureus's stock.  Bercowy made these purchases

through his online access of his relative's brokerage account at an on-line brokerage firm.  To

purchase shares of Aureus, Bercowy sold shares of various Fortune 500 companies such as

Merck & Co., Inc. Abbott, and Apple, which had been held in the relative's brokerage account.

3

12.     On August 4, 2016, when Bercowy began to purchase shares of Aureus, the price per share was around $0.52.

13.     On certain days during the period between August 4, 2016 and August 15, 2016, Bercowy's purchases represented a large percentage of the daily trading volume in shares of Aureus.  For example, on August 9, 2016, Bercowy's trading was 42 percent of the daily trading volume for that day.

14.     Between August 4 and August 15, 2016, as Aureus's price per share rose, Bercowy purchased a total of 3,025,250 shares for $2,858,271 at an average price per share of $0.94.

15.     Set forth below is a summary of Bercowy's trading in shares of Aureus in the period from August 4, 2016 through August 15, 2016:

| Date | BUYS | | | SELLS | | |
|---|---|---|---|---|---|---|
| | Quantity | Dollar Value | Average Buy Price | Quantity | Dollar Value | Average Sell Price |
| 8/4/2016 | 50,000 | (26,000) | 0.52 | - | - | - |
| 8/5/2016 | 300,000 | (195,000) | 0.65 | (50,000) | 32,500 | 0.65 |
| 8/8/2016 | 700,000 | (444,000) | 0.63 | - | - | - |
| 8/9/2016 | 1,000,000 | (972,023) | 0.97 | - | - | - |
| 8/10/2016 | 220,250 | (238,799) | 1.08 | (20,250) | 21,460 | 1.06 |
| 8/11/2016 | 750,000 | (975,000) | 1.30 | - | - | - |
| 8/15/2016 | 5,000 | (7,450) | 1.49 | - | - | - |
| TOTAL | 3,025,250 | (2,858,271) | 0.94 | (70,250) | 53,960 | 0.77 |

16.     During the period of time when he was accumulating shares of Aureus, Bercowy entered a number of orders for Aureus shares that were intended solely to maintain or boost the company's stock price. Some of Bercowy's trading included "buy limit orders," that is, orders to buy at a designated limit price or lower.  Bercowy would subsequently cancel those orders within minutes or even seconds of entering the order.

17.     For example, on Friday, August 12, 2016, Bercowy placed a series of large buy

limit orders for shares of Aureus which were $.01-.05 above the current highest market price to

purchase the stock.  He subsequently canceled those orders minutes or seconds later.  None of

the following four orders for Aureus stock placed by Bercowy were filled and the total actual

market trading volume for August 12, 2016, was less than 600,000 shares:

| August 12, 2016 Activity | | | |
|---|---|---|---|
| Time of Buy Order | Limit Price | Number of Shares | Time of Cancellation |
| 10:52:05 AM | $     1.40 | 625,000 | 10:53:51 AM |
| 12:54:08 PM | $     1.40 | 300,000 | 12:55:21 PM |
| 12:55:21 PM | $     1.40 | 350,000 | 12:56:08 PM |
| 1:01:42 PM | $     1.41 | 350,000 | 1:03:36 PM |

18.     On Monday, August 15, 2016, on a day when the total market trading volume for

Aureus was less than 470,000 shares, Bercowy placed five large buy limit orders – four of which

were each larger than the total trading volume for the day.  In each instance, Bercowy canceled

them, as set forth below:

| August 15, 2016 Activity | | | |
|---|---|---|---|
| Time of Buy Order | Limit Price | Number of Shares | Time of Cancellation |
| 11:05:04 AM | $     1.50 | 500,000 | 11:06:18 AM |
| 11:19:39 AM | $     1.50 | 555,000 | 11:21:40 AM |
| 11:28:49 AM | $     1.50 | 555,000 | 11:29:54 AM |
| 11:33:12 AM | $     1.50 | 555,000 | 11:36:01 AM |
| 11:37:38 AM | $     1.50 | 45,000 | 11:48:23 AM |

19.     During the period from August 4 through August 15, 2016, when Bercowy

entered into the above trading orders for Aureus stock, the price per share of Aureus securities

5

increased from $0.519 on August 4, 2016 to $1.62 on August 16, 2016 while the overall volume

of trading (including Bercowy's trades plus all others) jumped from 100 shares on August 3,

2016 (the day prior to the start of Bercowy's trading) to 5,572,953 on August 4, 2016 and

continued to trade in multiple millions per day for several more days.

20.     At the time of conducting his trading and placing orders that he cancelled within

minutes of placing them, Bercowy intended that such actions would have the effect of increasing

both the price and volume of trading in Aureus securities.  On August 17, 2016, in a recorded

telephone call between Bercowy and a representative of the brokerage firm through which

Bercowy was trading in Aureus securities (with the relative of Bercowy who owned the account

also on the call), Bercowy admitted that, through his trading, he was trying to get Aureus's

securities to reach a certain price.  Specifically, he stated on the recorded call that he and others

were trying to boost the company's stock price to between $2.00-$3.00 per share:  "[w]ith

Aureus, we're looking for it to get to $2.00, but that's not going to be until next week.  I've

spoken with them."  He further stated:  "they're expecting $2.00 - $3.00…[but] I'll call the

market makers and say I have no choice but I need to clear up the deficit right away" referring to

his need to sell Aureus securities because of a margin call in his relative's account.  A margin

call is a broker's demand on an investor to deposit additional money or securities so that the

account has enough value to secure the debt or margin.

21.     On August 23, 2016, the price of Aureus stock dropped from $1.06 to $.14 per

share.

22.     Even after the share price of Aureus dropped, Bercowy continued his efforts to

artificially boost the price through manipulative activity.  On August 25, 2016, a representative

of the brokerage firm through which Bercowy was trading in Aureus securities spoke with Bercowy on the telephone. In the conversation, which was recorded, Bercowy recalled that his relative's account had held upwards of 3 million shares of Aureus. He also commented that Aureus's stock price had dropped to $.06 a share.

23.     In attempting to explain his decision to sell securities of Fortune 500 companies in favor of a large position in Aureus, Bercowy admitted in the recorded telephone call with the brokerage firm's representative that his intent was to collude with others to manipulate the price of Aureus shares. Bercowy told the brokerage firm's representative in the recorded telephone call on August 25, 2016, that he had been working with the "market makers" of Aureus shares to establish the "proper price." A "market maker," when acting in its appropriate role, is a firm that stands ready to buy and sell a particular stock on a regular and continuous basis at a publicly quoted price. Bercowy stated to the brokerage firm's representative in this recorded telephone call that "what drove the Aureus down is that other people panicked…I mean, it is a penny stock at the moment, but it was $1.50 and it's going to go to $3.00, we know that." Bercowy said he was currently "working with the market makers…reestablishing the proper price." Bercowy told the brokerage firm representative on this recorded telephone call that "[t]here's something we want to try…what they've asked me to do this afternoon is to put in an order…a limit order for [Aureus] for 150,000 shares…at the limit price of $0.50, recognizing that the offer price is much less."

24.     In the above-referenced recorded calls, Bercowy's statements about other market participants and target prices reflect his intention to assist and participate in a scheme to

manipulate the market for the securities of Aureus, specifically a scheme to maintain and ultimately increase the price of Aureus securities.

## FIRST CLAIM FOR RELIEF
### (Violation of Section 9(a)(2) of the Exchange Act)

25.     The Commission repeats and realleges paragraphs 1 through 24 above.

26.     Section 9(a)(2) of the Exchange Act [15 U.S.C. § 78i(a)] makes it unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange to effect alone or with one or more other persons, a series of transactions in any security, registered on a national securities exchange, any security not so registered, or in connection with any security-based swap or security-based swap agreement with respect to such security creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

27.     While amassing a three million share position in Aureus, Bercowy entered and quickly cancelled a series of large orders that were incongruent with prevailing quotations.  On certain days, Bercowy's orders represented a significant portion of the total volume of trading in the securities of Aureus.  Bercowy placed these orders to raise the price of Aureus share to induce others to purchase shares of Aureus at such prices.

## SECOND CLAIM FOR RELIEF
### (Violation of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c)

28.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-24 of the Complaint as if set forth fully herein.

29.      Bercowy, directly or indirectly, acting knowingly or recklessly, in connection with the purchase or sale of securities, by the use of means and instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange: (a) employed or is employing devices, schemes or artifices to defraud; and/or (c) engaged or is engaging in acts, practices or courses of business which operate as a fraud or deceit upon certain persons.

30.      As a result, Bercowy has violated Section 10(b) of the Exchange Act [15 U.S.C.§78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §240.10b-5(a) and (c)].

### THIRD CLAIM FOR RELIEF
### (Violation of Section 17(a)(1))

31.      The Commission repeats and incorporates by reference the allegations in paragraphs 1-24 of the Complaint as if set forth fully herein.

32.      Bercowy directly and indirectly, acting intentionally, knowingly or recklessly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails has employed or is employing devices, schemes or artifices to defraud.

33.      As a result, Bercowy has violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. §77q(a)(1)].

### FOURTH CLAIM FOR RELIEF
### (Violation of Section 17(a)(3))

34.      The Commission repeats and incorporates by reference the allegations in paragraphs 1-24 of the Complaint as if set forth fully herein.

35.      Bercowy by engaging in the conduct described above in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate

commerce or by the use of the mails, engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon the purchasers of such securities.

36.    By engaging in the conduct described above, Bercowy violated, and unless enjoined will continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(3))].

## PRAYER FOR RELIEF

WHEREFORE, the Commission requests that this Court:

A.    Enter a permanent injunction restraining Bercowy and each of his agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of:

1.    Section 9(a) of the Exchange Act [15 U.S.C. § 78i(a)]

2.    Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5]; and

3.    Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

B.    Require Bercowy to disgorge his ill-gotten gains, plus pre-judgment interest;

C.    Order Bercowy to pay an appropriate civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)];

D.    Order Bercowy be unconditionally and permanently prohibited from participating in any offering of a penny stock, as authorized by Section 20(g) of the Securities Act [15 U.S.C. § 77t(g) and Section 21d(6)(B) of the Exchange Act [15 U.S.C. § 78u(d)(6)(B)];

E.      Retain jurisdiction over this action to implement and carry out the terms of all

orders and decrees that may be entered; and

F.      Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Deena R. Bernstein
Deena R. Bernstein (Mass. Bar No. 558721)
    Senior Trial Counsel
Amy Gwiazda (Mass. Bar 663494)
    Assistant Regional Director

**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street
Boston, MA 02110
(617) 573-8813 (Bernstein direct)
(617) 573-4590 (fax)
bernsteind@sec.gov (Bernstein email)

Dated: April 2, 2018